OPINION OF THE COURT
Herbert A. Posner, J.
This is a small claims action which involves a defendant doing business as Birds in Paradise and a plaintiff whose purchase of an exotic bird turned into a veritable Miltonian "Paradise Lost”.
On December 18, 1978, the plaintiff, Bart Tarulli signed an agreement with the defendant, a dealer in birds, for the sale of one Moluccan Cockatoo. The agreed upon consideration was $400 cash and one Mexican Yellow Head Parrot. The agreement of sale, specifically signed and agreed to by plaintiff, Tarulli, stated as follows: "This bird is guaranteed to be in good health, to the best of our knowledge, at the time of sale. The customer has a health guarantee extending to close of business 12/20/78, in which to have the bird checked by a *1055 licensed veterinarian and is urged to do so. If the veterinarian finds anything seriously wrong with the bird, it will be exchanged for another bird of. equal value of the customer’s choice, at once or when available, provided a letter from the examining veterinarian is offered as evidence of the bird’s illness, and the bird is returned within the guarantee period. No exchange will be made after this period.”
Plaintiff testified during trial that he never took the cockatoo to a veterinarian during the period permitted in the agreement. On or about January 12, 1979, the cockatoo showed symptoms of illness and plaintiff brought said bird to Dr. B. J. Schiller, a veterinarian. Despite the extensive care and treatment administered by Dr. Schiller, the cockatoo died that same evening.
Dr. Schiller, as an expert witness for the plaintiff, testified that a postmortem examination revealed the cause of death as anemia which she would guess existed for more than three weeks, but was not sure how long.
It is the plaintiff’s contention that the defendant breached the implied warranty of merchantability under section 2-314 of the Uniform Commercial Code and should be entitled to the sum of $800 ($400 plus the value of the Mexican Yellow Head Parrot), and $50 for veterinary fees.
The plaintiff bolsters this contention by arguing that birds fall within the defintion of "goods” as contained in subdivision (1) of section 2-107 of the Uniform Commercial Code and cites Vlases v Montgomery Ward & Co. (377 F2d 846). Furthermore, the defendant satisfies the definition of a "merchant” under section 2-104 of the Uniform Commercial Code. Thus, the plaintiff maintains that he bought "goods” from a "merchant” and said goods were defective at the time of sale, thereby, breaching the implied warranty of merchantability, which was not excluded or modified as per section 2-316 of the Uniform Commercial Code. The plaintiff emphasizes (Uniform Commercial Code, § 2-316, subd [2]) that to exclude or modify the implied warranty of merchantability, there must be specific mention of the word "merchantability” and the writing must be conspicuous. Here, as in Zacari v Harris Co. (33 AD2d 17), the plaintiff argues that the defendant failed expressly to exclude the implied warranty of merchantability by failing to specifically mention merchantability in the conditions of sale.
However, subdivision (2) of section 2-316 of the Uniform Commercial Code is not the exclusive mechanism to exclude *1056 or modify the implied warranty of merchantability. Subdivision (3) provides as follows:
"Notwithstanding subsection (2) * * *
"(b) When the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him”.
The Official Comment 8 of section 2-316 of the code states that this subsection goes to the nature of the responsibility assumed by the seller at the time of the making of the contract.
"Of course if the buyer discovers the defect and uses the goods anyway, or if he unreasonably fails to examine the goods before he uses them, resulting injuries may be found to result from his own action rather than proximately from a breach of warranty * * *
"In order to bring the transaction within the scope of 'refused to examine’ in paragraph (b), it is not sufficient that the goods are available for inspection. There must in addition be a demand by the seller that the buyer examine the goods fully. The seller by the demand puts the buyer on notice that he is assuming the risk of defects which the examination ought to reveal.”
This court finds that the defendant did in fact make such a demand upon the plaintiff to have the cockatoo checked by a licensed veterinarian before December 20, 1978, and it was specifically for the purpose of having the veterinarian determine whether there is "anything seriously wrong with the bird,” which only then would entitle the plaintiff to certain relief. The defendant cited an eminent veterinarian, T. J. Lafeber, D.V.M., "Tender Loving Care for Pet Birds”, page 13, specifically, the chapter on "Guarantee and Veterinary Examination”, as to the practice in bird sales: "An astute bird owner understands the importance of starting with a healthy bird and also realizes that when purchasing a new bird, a complete physical examination is needed to discover obscure problems. Further, in order to protect this investment, the examination must be performed within 48 hours after purchase. As with any type of livestock — dogs, cats, horses, etc.— the purchase agreement implies that the animal was in normal health at the time of sale. If the bird does not pass as healthy, the sale is negated. At times, the excellence of a bird *1057 will cause the owner to overlook a minor problem and rather than return a bird, accept the responsibility of the problem himself.”
Here, the defendant by the demand for an examination of the cockatoo by a veterinarian put the plaintiff on notice that he is assuming the risk of defects which the examination ought to reveal. Not only was there testimony by the plaintiff that he never took the cockatoo to a veterinarian within the designated period; in effect, bringing the transaction within the scope of a refusal to examine, as per section 2-316 (subd [3], par [b]). But, there is also plaintiff’s expert testimony of Dr. Schiller, who on cross-examination was asked: "If the bird had been brought in during the guarantee period, could the anemia have been detected?” And in answer to that question, Dr. Schiller, stated unequivocally "yes”. In other words, the burden of examination was on the plaintiff, who by not exercising his obligation which would have uncovered the anemia, forfeited any claim for damages based on such discoverable defects. The S —Creek Ranch v Monier. & Co. (509 P2d 777 [Wyo]) case affirms this principle where it held that the implied warranty of merchantability applies to livestock, and applies to latent diseases in livestock; and the fact that buyer’s employee inspected sheep prior to delivery would not have precluded implied warranty where vibriosis with which sheep were infected would not have been apparent to even a trained veterinarian. In our case, the plaintiff’s own expert witness testified that had the cockatoo in fact been examined within the designated period the latent anemia would have been detected; and this neglect on the part of the plaintiff, in the opinion of the court, precludes any implied warranty of merchantability. (See, also, Michael-Regan Co. v Lindell, 527 F2d 653, where buyer had opportunity to inspect, test, and examine goods and did not, even if defect was latent, no warranty of merchantability allowed.)
Judgment for defendant.